IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| GAIL BUSS<br>4502 N. Candlewood Drive<br>Beverly Hills, Florida 34465, | * <br><br> * |
| and | * |
| JOSEPH BUSS<br>4502 N. Candlewood Drive<br>Beverly Hills, Florida 34465, | * <br><br> * |
| Plaintiffs, | * |
| v. | * |
| NILAR U, M.D.<br>912 Washington Road<br>Westminster, Maryland 21157, | * <br><br> * |
| and | * |
| CARROLL PRIMARY CARE, INC.<br>912 Washington Road<br>Westminster, Maryland 21157, | * <br><br> *   Civil Action No.: |
| Defendants. | * |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## COMPLAINT

Gail Buss and Joseph Buss, Plaintiffs, by and through their undersigned attorneys,

Stephen J. Hughes and Treanor Pope and Hughes, P.A., sue Nilar U, M.D. and Carroll Primary

Care, Inc., and in support thereof, state:

## JURISDICTION AND VENUE

1.      Plaintiffs Gail Buss and Joseph Buss are citizens and residents of the State of Florida, residing at 4502 N. Candlewood Drive, Beverly Hills, Florida  34465, and, at all times relevant hereto, were husband and wife.

2.      Nilar U, M.D. ("Dr. U") is, on information and belief, a citizen and resident of Carroll County, Maryland, who regularly transacts business and provides medical care and treatment to patients in Carroll County, Maryland.  At all times relevant hereto, Dr. U was an agent, servant and employee of Carroll Primary Care, Inc.

3.      Carroll Primary Care, Inc. ("CPC") is a corporation organized and operating under the laws of the State of Maryland and was, at all times relevant hereto, a Health Care Provider which, by its agents, servants, and employees, both actual and/or apparent, rendered medical care to citizens of Carroll County, Maryland.  It was also the actual and apparent employer of Dr. U.

4.      The amount of this claim exceeds Seventy-Five Thousand Dollars ($75,000.00).

5.      This Court has original subject matter jurisdiction over this matter pursuant to the provisions of 28 U.S.C. § 1332, because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the action is between citizens of different states.  There is complete diversity of citizenship.

6.      This action was filed before the Health Care Alternative Dispute Resolution Office of Maryland on October 12, 2010, at which time a Claim Form, Personal Information Certification and Statement of Claim were filed with the HCADRO.  On or about January 12, 2011 a Certificate of Merit and Report of Steven M. Schwartz, M.D. were filed with the HCADRO:  On January 26, 2011 a Notice of Claimants' Election to Waive Arbitration was filed

with the HCADRO, and on February 7, 2011, the Director of the HCADRO entered an Order

transferring the case to the United States District Court for the District of Maryland, Northern

Division.  A true and correct copy of the Order of Transfer is attached hereto as Exhibit 1.

## FACTS COMMON TO ALL COUNTS

7.     For many years prior to October of 2007, Plaintiff Gail Buss was a patient at

CPC, under the care of Pamela Pagano, M.D.   Dr. Pagano took a leave of absence, and

recommended that Mrs. Buss become a patient of Nilar U, M.D., another physician at CPC.

8.     Many years ago, Plaintiff Gail Buss experienced a severe allergic reaction to a

drug called Macrodantin.  Though she recovered from that allergic reaction, she had a known

allergy to the medication which was well documented in the records of CPC.

9.     On or about October 12, 2007 Mrs. Buss visited CPC for a check up with Dr. U,

and to review the results of labs that had previously been ordered.  Dr. U advised Mrs. Buss that

she had blood in her urine, as a result of a urinary tract infection, and also that her thyroid

function was abnormal.

10.     Dr. U prescribed Synthroid for the thyroid abnormality, and gave Mrs. Buss a

prescription for a medication called Nitrofur for the urinary tract infection.

11.     Unbeknownst to Mrs. Buss, Nitrofur was in the same family of medications as

Macrodantin, the drug to which she had previously demonstrated a severe allergy.

12.     Mrs. Buss took the first dose of medication as prescribed right after lunch on

October 12, 2007.  Later that day, she went to the grocery store.  While in the store, she began to

feel a sensation of being "freezing cold", as well as a "pins and needles" sensation in her arms

and hands, and otherwise was feeling unwell.

13.. Upon returning home from the store, Mrs. Buss was concerned about these symptoms, and called CPC where she spoke to the physician "on call," Dr. Pallan. Dr. Pallan reported that it "sounded like an allergic reaction," and that Mrs. Buss should stop taking the medication prescribed. She did so.

14. Throughout the day on October 12, 2007 Mrs. Buss continued to feel poorly, with a sensation of cold and "pins and needles" sensations in her extremities. She developed a fever of over 103 degrees. She was confined to the couch overnight.

15. By the following day, Mrs. Buss was having severe difficulty breathing; she had to breathe very deeply in order to catch her breath.

16. Within several days of the reaction, most of the other symptoms went away, but Mrs. Buss was still having extreme difficulty breathing.

17. The following Sunday, Mrs. Buss continued to feel poorly. She called CPC again, and Dr. Pallan instructed her to come in to the office. Dr. Pallan met Mrs. Buss at CPC. She examined her and immediately sent her to the Emergency Room to have a VQ lung scan. Mrs. Buss felt like she was "suffocating or drowning."

18. Mrs. Buss presented to the Emergency Room at the Carroll Hospital Center on October 12, 2007. The VQ scan was ordered. The scan suggested excessive moisture in the lungs, which Mrs. Buss was told was a reaction to the medication prescribed by Dr. U. At this time, she was also demonstrating an abnormally low blood pressure, so the ER physicians decided to admit her to the Carroll Hospital Center. A nuclear stress test was performed, which was negative. She was thereafter discharged on Monday evening.

19. In the weeks that followed, Mrs. Buss continued to have trouble breathing. She saw a Dr. Hirpara at CPC, who referred her to a pulmonary specialist, Dr. Nareed Shah. Dr.

Shah reviewed the results of the VQ scan, and told Mrs. Buss that he thought the scan demonstrated fluid on her lungs, probably as a result of the allergic reaction. He sent her for a CT scan.

20.     In reviewing the CT scan with Mrs. Buss, Dr. Shah advised her that he saw "white things" that he could not identify in her lungs. He thought she had scarring and "dots" on her lungs, probably as a consequence of the allergic reaction. She was placed on steroids for a period of time, but these were not successful in relieving the breathing difficulties. Over time, these "white spots" on her lungs developed into nodules that have interfered with Mrs. Buss' ability to breathe normally.

21.     At the present time, Mrs. Buss continues to have significant breathing difficulty as a consequence of the allergic reaction she experienced almost three years ago. These breathing difficulties are apparently permanent, have had a negative impact on Mrs. Buss' life, and have severely curtailed the activities in which she can engage.

## COUNT I
## NEGLIGENCE
## (NILAR U, M.D.)

22.     The facts and matters alleged in Paragraphs 1 through 21 above, are repeated and realleged as if fully set forth herein.

23.     As a Health Care Provider rendering services to patients in the State of Maryland, Dr. U owed to the public at large and to Mrs. Buss in particular a duty to exercise that degree of care and skill ordinarily exercised by reasonably competent practitioners within her area of specialty acting under the same or similar circumstances.

24.     Dr. U breached the applicable standards of care in the treatment of Mrs. Buss in that she failed to use due care in reviewing Mrs. Buss' medical chart and in taking a medical

history from her in order to determine that she had a well-documented history of adverse and allergic reactions to medications in the Macrodantin family.

26.     As a direct result of the negligence of Dr. U as previously described, Mrs. Buss experienced a needless and severe allergic reaction, which caused multiple painful symptoms in the short term, and created a profound and apparently permanent pulmonary impairment.  As a consequence of this impairment, Mrs. Buss' ability to engage in her normal activities of life have been severely curtailed, and she has experienced pain, mental anguish, embarrassment, humiliation, and incurred other economic and non-economic damages, including past and future medical expenses, without any negligence on her part contributing thereto.

        WHEREFORE, Gail Buss, Plaintiff, demands judgment against Nilar U, M.D. for all injuries and damages which she has suffered as a consequence of the negligence of this Defendant, as aforesaid.

## COUNT II
## INFORMED CONSENT
### (NILAR U, M.D.)

26.     The facts and matters alleged in Paragraphs 1 through 25 above, are repeated and realleged as if fully set forth herein.

27.     As a Health Care Provider rendering care to Gail Buss, Dr. U owed to Mrs. Buss a duty to obtain her proper informed consent to any contemplated treatment by apprising Mrs. Buss of the risks, benefits, potential complications and reasonable alternatives to the proposed treatment.

28.     Dr. U failed to disclose to Mrs. Buss all of those risks, complications and alternatives to treatment that a reasonably prudent patient in the position of Mrs. Buss would consider material in making a decision as to whether or not to submit to the proposed treatment.

In particular, Dr. U failed to advise Mrs. Buss of the substantial risk of an allergic reaction associated with a prescription of Nitrofur, in that it was in the same family of medications to which she had demonstrated a previous allergy; further failed to advise her that there were other available medications or treatments for a suspected urinary tract infection that did not pose the risk of allergic reaction; and otherwise failed to inform her of the risks associated with the use of the medication.

29.    By failing to so advise Mrs. Buss, Dr. U failed to obtain Mrs. Buss' proper informed consent.

30.    As a direct and proximate result of the failure of Dr. U to obtain Mrs. Buss' proper informed consent, Mrs. Buss was caused to suffer and sustain a severe allergic reaction accompanied by pain, limitation of activities, mental anguish, embarrassment, humiliation, permanent pulmonary limitations, medical expenses past and future, and other injuries, without any negligence on her part contributing thereto.

WHEREFORE, Gail Buss, Plaintiff, requests the entry of judgment against Nilar U, M.D. for all injuries and damages which she has sustained as a consequence of the failure of this Defendant to obtain her proper informed consent.

**COUNT III**
**(VICARIOUS LIABILITY)**
**(CARROLL PRIMARY CARE, INC.)**

31.    The facts and matters alleged in Paragraphs 1 through 30 above, are repeated and realleged as if fully set forth herein.

32.    Drs. U was, at all times relevant hereto, the actual and/or apparent agent, servant or employee of Carroll Primary Care, Inc., acting within the scope of her employment.

7

33.    Carroll Primary Care, Inc. is vicariously liable for the negligent conduct of its actual and/or apparent agents, servants, and employees committed while acting within the scope of their employment.

34.    Carroll Primary Care, Inc. is therefore vicariously liable for the negligence of Dr. U as aforesaid, in connection with her care and treatment of the Plaintiff, Gail Buss.

WHEREFORE, Gail Buss, Plaintiff, demands judgment against Carroll Primary Care, Inc. for all injuries and damages which she has sustained as a consequence of the negligence of its actual and/or apparent agents, servants, and employees, as aforesaid.

**COUNT IV**
**(LOSS OF CONSORTIUM)**
**(ALL DEFENDANTS)**

35.    The facts and matters alleged in Paragraphs 1 through 34 are repeated and realleged as if fully set forth herein.

36.    At all times relevant hereto, Plaintiffs Gail Buss and Joseph Buss were and are husband and wife.

37.    The negligent conduct of the Defendants, as previously described, caused injury to the marital relationship of Mr. and Mrs. Buss, including, but not limited to, a loss of society, affection, assistance, companionship, and limitation of activities as a consequence of Mrs. Buss' pain and disability.

WHEREFORE, Gail Buss and Joseph Buss, husband and wife, Plaintiffs, demand judgment against Nilar U, M.D. and Carroll Primary Care, Inc. for all injuries and damages to their marital relationship which they have sustained as a consequence of the negligence of these Defendants, as aforesaid.

Respectfully submitted,

Stephen J. Hughes, Esquire (#03313)
Treanor Pope & Hughes, P.A.
29 W. Susquehanna Avenue, Suite 110
Towson, Maryland 21204
Tel:  (410) 494-7777
sjhughes@tph-law.com

Attorneys for Plaintiffs